UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BRANDON BARNES,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | 19 Civ. 7275 |

THE CITY OF NEW YORK, DET. ALBERTO    **JURY TRIAL DEMANDED**
PIZARRO, and P.O.s  JOHN and JANE DOE #1-10,
individually and in their official capacities, (the names
John and Jane Doe being fictitious, as the true names are
presently unknown),

Defendants.

-------------------------------------------------------------------X

Plaintiff BRANDON BARNES, by his attorney, ROSE M. WEBER, complaining of the

defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil

rights, as said rights are secured by said statutes and the Constitutions of the State of New York

and the United States.    Plaintiff also asserts supplemental state law tort claims.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the

First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3.      Jurisdiction is founded upon 28 U.S.C. §§  1331, 1343, and 1367.

## VENUE

4.      Venue is properly laid in the Southern District of New York under U.S.C.

§ 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.     Plaintiff BRANDON BARNES is an African-American male, a citizen of the United States, and at all relevant times a resident of the City and State of New York.

7.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.     Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

9.     That at all times hereinafter mentioned, the individually named defendants DET. ALBERTO PIZARRO and P.O.s  JOHN and JANE DOE #1-10 were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant THE CITY OF NEW

YORK.

12.    Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## INCIDENT FACTS

13.    On September 14, 2018, at approximately 8:30 p.m., plaintiff BRANDON BARNES was lawfully present on the corner of W. 112th Street and Lenox Avenue, in the County, City and State of New York.

14.    At aforesaid time and place, plaintiff BRANDON BARNES was suddenly accosted by members of the New York City Police Department, including defendant DET. ALBERTO PIZARRO.

15.    Plaintiff was doing nothing that was against the law.

16.    Defendants handcuffed plaintiff BRANDON BARNES within seconds of arriving on the scene.

17.    Defendants deliberately handcuffed plaintiff BRANDON BARNES more tightly and violently than is authorized or required by proper NYPD procedure.

18.    Defendants kneed plaintiff BRANDON BARNES in the groin, punched him in the stomach, and dragged him into a police vehicle.

19.    As a result of defendants' brutality, plaintiff BRANDON BARNES experienced pain, bruising and abrasions, and injury to his wrist.

20.    Defendants arrested plaintiff BRANDON BARNES on charges of drinking in public, possession of marijuana, and resisting arrest, despite defendants' knowledge that they lacked probable cause to do so.

21.    Defendants transported plaintiff BRANDON BARNES to the 28th Precinct of the New York City Police Department in Manhattan.

22.    While at the precinct, plaintiff BRANDON BARNES was subjected to an unlawful strip search and an unlawful cavity search.

23.    Defendants transported plaintiff BRANDON BARNES from the 28th Precinct to Manhattan Central Booking.

24.    Plaintiff BRANDON BARNES was held and detained in custody for approximately twenty-four hours.

25.    Defendants initiated criminal proceedings against plaintiff BRANDON BARNES despite defendants' knowledge that they lacked probable cause to do so.

26.    Plaintiff BRANDON BARNES was required to make court appearances to defend himself in the criminal proceedings that defendants had initiated against him.

27.    On or about November 29, 2018, all charges against plaintiff BRANDON BARNES were dismissed.

28.    As a result of the foregoing, plaintiff BRANDON BARNES sustained, *inter alia*, physical injury, loss of liberty, emotional distress, embarrassment, and humiliation, damage to reputation, and deprivation of his constitutional rights.

## **MONELL FACTS**

29.    Both before and after the arrest of plaintiff BRANDON BARNES, a custom and practice of lawlessness and corruption pervaded NYPD narcotics operations.

30.    This custom and practice was first exposed in January of 2008, when four officers from Brooklyn South Narcotics were arrested and charged with criminal offenses.

31.    In June 2011, Sgt. William Eiseman pled guilty to fabricating narcotics charges

and admitted to training young officers to do the same (Melissa Grace, *NYPD Sgt. William Eiseman Pleads Guilty to Lying Under Oath in Plea Deal*, N.Y. Daily News, June 27, 2011).

32.     The on-going custom and practice in making unlawful and fraudulent narcotics arrests was confirmed in October of 2011 in sworn testimony by former NYPD officer Steven Anderson.

33.     On May 29, 2013, P.O. Isaias Alicea was convicted of ten felony counts of filing a false document and one misdemeanor count of official misconduct after falsely claiming that he saw two men conducting a drug deal in West Harlem.

34.     In August 2013 former NYPD officer Genaro Morales testified that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013).

35.     In 2015, SDNY Judge Engelmeyer suppressed narcotics evidence because of Bronx P.O. Luis Rios' perjury (Josh Saul, *Lying Cop Costs NYPD Big-Time Bust*, N.Y. Post, May 27, 2015).

36.     In early 2017, Detectives Sasha Cordoba and Kevin Desormeau were indicted in Queens for lying about the circumstances of narcotics arrests.

37.     In October 2017, EDNY Judge Weinstein permitted a *Monell* claim to go forward in a case alleging perjury by narcotics officers, noting that "A reasonable jury may find that this practice is not isolated to a few 'bad' police officers, but is endemic, that NYPD officials are aware this pattern exists and that they have failed to intervene and properly supervise." (*Cordero v. City of New York*, No. 15 CV 3436, 2017 WL 4685544, at *11 (E.D.N.Y. Oct. 17, 2017).)

38.     Upon information and belief, because of the custom and practice of corruption and lawlessness by NYPD narcotics officers, approximately 400 criminal prosecutions had to be

dismissed by the Queens County and Kings County District Attorney's Offices.

39. As a direct result of this custom and practice, defendants in the instant matter felt free to arrest plaintiff BRANDON BARNES without probable cause and to manufacture evidence against him.

40. Both before and after the arrest of plaintiff BRANDON BARNES, NYPD officers were subject to "productivity goals" (i.e., arrest quotas).

41. The existence of the aforesaid custom and practice may be inferred from:

• NYPD Operations Order 52, issued in October 2011, mandating that police officers be evaluated on their activity numbers (including number of arrests) and that officers be disciplined if their numbers are too low; and requiring that NYPD managers set "performance goals" for "proactive enforcement activities" including "self-initiated arrests";

• the directive issued in 2002 by Deputy Chief Michael Marino setting quotas for summonses and arrests (Sean Gardiner, *NYPD Chief Set "Goals" for Officers*, Wall St. J., Mar. 22, 2013);

• the 2006 admission by Deputy Commissioner Paul J. Browne that commanders are permitted to set "productivity goals" (Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, N.Y. Times, Jan. 20, 2006);

• the 2010 admission by Deputy Commissioner Paul J. Browne that police officers are provided with "productivity goals" (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

• the information provided by whistle-blower police officer Adrian Schoolcraft documenting the existence of arrest quotas (Rocco Parascandola, *NYPD Whistleblower Adrian Schoolcraft Files for Retirement*, N.Y. Daily News, Dec. 4, 2015);

- the information provided by whistle-blower police officer Adil Polanco that commanders relentlessly pressure police officers to make more arrests (*NYPD Officer Claims Pressure to Make Arrests*, http://abc7ny.com/archive/7305356/, Mar. 2, 2010);

- the information provided by whistle-blower police officer Craig Matthews that police are forced to adhere to an illegal quota system, and that he was retaliated against for protesting the quotas (Graham Rayman, *Craig Matthews, Police Officer, Has His Quota Lawsuit Reinstated by Federal Appeals Court*, Village Voice, Nov. 29, 2012);

- audiotapes secretly recorded at the 81st Precinct in 2010, in which precinct commanders threatened police officers about what would happen if they did not meet arrest quotas (Graham Rayman, *The NYPD Tapes:  Inside Bed-Stuy's 81st Precinct*, Village Voice, May 4, 2010);

- testimony by P.O. Bryan Rothwell at his departmental trial in January 2014 that police officers in his unit in Brooklyn were required to make at least two arrests per month (Rocco Parascandola, *Brooklyn Cop Testifies That He Was Expected to Make Two Arrests, Issue 20 Summonses Each Month*, N.Y. Daily News, Mar. 6, 2014);

- the facts set forth in the Second Amended Complaint in the class-action *Floyd v. City of New York*, 08 Civ. 1034 (SAS), all of which are incorporated herein, including allegations that NYPD's weekly CompStat meetings put pressure on police officers to engage in behaviors designed to make them appear "productive" (¶ 114); and that NYPD maintains a de facto quota system requiring a certain number of arrests per month, with police officers facing adverse employment consequences for not meeting the quotas (¶ 125);

- Judge Scheindlin's Opinion & Order in *Floyd* dated August 12, 2013, finding *inter alia* that NYPD officers experienced significant pressure to increase their stop-and-frisk activity (p. 64), that senior NYPD officials routinely pressured commanders to increase enforcement

activity, and that the pressure was passed down to the rank and file (p. 67-71); and that police officers may suffer adverse employment consequences for not engaging in enough "proactive enforcement activities," including arrests (p. 80);

- the facts set forth in the Complaints in the class-action *Stinson v. City of New York*, 10 Civ. 2248 (RWS), all of which are incorporated herein, including allegations that quota pressure forced police officers to issue bogus summonses and conduct unlawful stop-and-frisks (Graham Rayman, *NYPD Quotas Leading to Civil Rights Violations, New Lawsuit Says* , Village Voice, June 7, 2010);

- the facts set forth in the Complaints in the class-action *Raymond v. City of New York*, 15 Civ. 6885 (LTS), all of which are incorporated herein, including allegations by the twelve police officer plaintiffs that quotas "absolutely exist," that the burden falls predominantly upon minority neighborhoods, and that police officers who do not meet quotas are punished and subjected to retaliation (*NYPD Still Enforces Illegal Quota System, Minority Officers Allege in Lawsuit*,          http://www.nbcnewyork.com/news/local/nypd-quotas-new-york-city-police-department-bill-bratton-edwin-raymond-370118201.html, Feb. 24, 2016);

- a full-page ad in the May 7, 2012 Daily News taken out by the Patrolmen's Benevolent Association, stating that in regard to quotas, "Don't Blame the Cop, Blame NYPD Management";

- testimony in August 2013 by former NYPD officer Genaro Morales that he and other members of his Bronx Narcotics team fabricated stories about narcotics possession and sale because of pressure to meet arrest quotas (Tara Palmeri & Kirstan Conley, *Cops Lied to Reach Arrest Quotas*, N.Y. Post, Oct. 14, 2013);

- the revelation in April 2015 by Anthony Miranda, chairman of the National Latino

Officers Association, that anti-crime officers on Staten Island and elsewhere were forced to play a "quota game" in which getting insufficient points for making arrests resulted in adverse employment consequences (Thomas Tracy, *NYPD Accused of Giving Points to Staten Island Cops for Making Arrests to Hit Quota*, N.Y. Daily News, Apr. 1, 2015);

- statements by NYPD Inspector General Philip Eure in April 2015 that NYPD would be evaluating officers based in part upon the number of arrests made (Rocco Parascandola, *NYPD Inspector General Philip Eure Calls for Upgrade of Cop Performance Reviews, Recommends Data-Driven Approach*, N.Y. Daily News, Apr. 21, 2015);

- allegations in January 2016 by P.O. Michael Birch that he was targeted by supervisors for not making enough arrests of minority young people (John Marzulli, *NYPD Cop Claims He Was Punished for Not Stopping Enough Black, Hispanic Teens in Subway*, N.Y. Daily News, Jan. 7, 2016);

- allegations in November 2016 by former P.O. Brendan Cronin that unrelenting pressure to meet arrest quotas drove him to drink (Stephen Rex Brown, *Former NYPD Cop Blames Arrest Quota Pressure for Drunken Shooting Frenzy That Nearly Killed a Man*, N.Y. Daily News, Nov. 25, 2016); and

- allegations in November 2016 by former P.O. Doreen Debattista that she got flak for not making enough arrests (Victoria Bekiempis, *Cop Slaps NYPD Supervisors With $5.5M Discrimination Suit After Allegedly Forcing Her Into Retirement Due To Gender, Age*, N.Y. Daily News, Nov. 23, 2016).

42.    Upon information and belief, as a direct result of these quotas, defendants in the instant matter felt pressure to arrest plaintiff BRANDON BARNES without probable cause and to manufacture evidence against him.

## FIRST CLAIM FOR RELIEF
## <u>DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>

43.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "42" with the same force and effect as if fully set forth herein.

44.    All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

45.    All of the aforementioned acts deprived plaintiff BRANDON BARNES of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

46.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

47.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

48.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## <u>FALSE ARREST UNDER 42 U.S.C. § 1983</u>

49.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "48" with the same force and effect as if fully set forth herein.

50.     As a result of the aforesaid conduct by defendants, plaintiff BRANDON BARNES was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent.

51.     As a result of the foregoing, plaintiff BRANDON BARNES's liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated, without probable cause.

## THIRD CLAIM FOR RELIEF
## UNLAWFUL SEARCH UNDER 42 U.S.C. § 1983

52.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "51" with the same force and effect as if fully set forth herein.

53.     Defendants strip-searched plaintiff BRANDON BARNES in the absence of any individualized reasonable suspicion that plaintiff was concealing weapons or contraband.

54.     As a result of the foregoing, plaintiff BRANDON BARNES was subjected to an illegal and improper strip search.

55.     Defendants cavity-searched plaintiff BRANDON BARNES in the absence of any individualized reasonable suspicion that plaintiff was concealing weapons or contraband.

56.     As a result of the foregoing, plaintiff BRANDON BARNES was subjected to an illegal and improper cavity search.

57.     The foregoing unlawful strip search and cavity search violated plaintiff BRANDON BARNES's constitutional right to privacy, as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

## FOURTH CLAIM FOR RELIEF
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983

58.     Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59.    Defendants issued legal process to place plaintiff BRANDON BARNES under arrest.

60.    Defendants arrested plaintiff BRANDON BARNES in order to obtain a collateral objective outside the legitimate ends of the legal process.

61.    Defendants acted with intent to do harm to plaintiff BRANDON BARNES without excuse or justification.

**FIFTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

62.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63.    Defendants misrepresented and falsified evidence before the District Attorney.

64.    Defendants did not make a complete and full statement of facts to the District Attorney.

65.    Defendants withheld exculpatory evidence from the District Attorney.

66.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff BRANDON BARNES.

67.    Defendants lacked probable cause to initiate criminal proceedings against plaintiff BRANDON BARNES.

68.    Defendants acted with malice in initiating criminal proceedings against plaintiff BRANDON BARNES.

69.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff BRANDON BARNES.

70.     Defendants lacked probable cause to continue criminal proceedings against plaintiff BRANDON BARNES.

71.     Defendants acted with malice in continuing criminal proceedings against plaintiff BRANDON BARNES.

72.     Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

73.     Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff BRANDON BARNES's favor on or about November 29, 2018, when all charges against him were dismissed.

**SIXTH CLAIM FOR RELIEF**
**DENIAL OF DUE PROCESS VIA FABRICATION OF EVIDENCE**
**UNDER 42 U.S.C. § 1983**

74.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

75.     Defendants created false evidence against plaintiff BRANDON BARNES.

76.     Defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

77.     Defendants misled juries, judges, and/or prosecutors by providing false testimony and proffering false evidence throughout the criminal proceedings.

78.     In creating and forwarding false information to prosecutors, defendants deprived plaintiff BRANDON BARNES of due process and violated his constitutional right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.

**SEVENTH CLAIM FOR RELIEF**
**EXCESSIVE FORCE UNDER 42 U.S.C. §  1983**

79.     Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80.     The level of force employed by defendants was objectively unreasonable and in violation of plaintiff BRANDON BARNES's constitutional rights.

81.     As a result of the aforementioned conduct of defendants, plaintiff BRANDON BARNES was subjected to excessive force and sustained physical injuries.

## EIGHTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE

82.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83.     Each and every individual defendant had an affirmative duty to intervene on plaintiff BRANDON BARNES's behalf to prevent the violation of his constitutional rights.

84.     The individual defendants failed to intervene on plaintiff BRANDON BARNES's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

85.     As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated.

## NINTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY

86.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87.     Defendants arrested, incarcerated, and prosecuted plaintiff BRANDON BARNES in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest, incarceration, and prosecution would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

88.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

89.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

90.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

a)    wrongfully charging individuals with narcotics offenses;

b)    manufacturing evidence against individuals allegedly involved in narcotics offenses; and

c)    arresting innocent persons in order to meet "productivity goals" (i.e., arrest quotas).

91.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff BRANDON BARNES.

92.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff BRANDON BARNES as alleged herein.

93.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiff BRANDON BARNES as alleged herein.

94.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiff BRANDON BARNES was falsely arrested and incarcerated and maliciously prosecuted.

95.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff BRANDON BARNES.

96.     Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff BRANDON BARNES's constitutional rights.

97.     All of the foregoing acts by defendants deprived plaintiff BRANDON BARNES of federally protected rights, including, but not limited to, the right:

A.      Not to be deprived of liberty without due process of law;

B.      To be free from seizure and arrest not based upon probable cause;

C.      Not to have excessive force imposed upon him;

D.      To be free from unlawful search;

E.      To be free from unwarranted and malicious criminal prosecution;

F.      To be free from malicious abuse of process;

G.      Not to have cruel and unusual punishment imposed upon him; and

H.      To receive equal protection under the law.

98.     As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of two million dollars ($2,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of two million dollars ($2,000,000.00).

## PENDANT STATE CLAIMS

99.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "98" with the same force and effect as if fully set forth herein.

100.    On or about December 12, 2018, and within ninety (90) days after the claims herein accrued, plaintiff duly served upon, presented to and filed with the City of New York, a Notice of Claim setting forth all facts and information required under General Municipal Law § 50-e.

101.    The City of New York has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

102.    The City of New York demanded a hearing pursuant to General Municipal Law § 50-h and said hearing was conducted on February 8, 2019.

103.    This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

104.    Plaintiff has complied with all conditions precedent to maintaining the instant action.

105.    This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE ARREST

106.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "105" with the same force and effect as if fully set forth herein.

107.    Defendant police officers arrested plaintiff BRANDON BARNES in the absence

of probable cause and without a warrant.

108.    As a result of the aforesaid conduct by defendants, plaintiff BRANDON BARNES was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the defendants.

109.    The aforesaid actions by the defendants constituted a deprivation of plaintiff BRANDON BARNES's rights.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### FALSE IMPRISONMENT

110.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "109" with the same force and effect as if fully set forth herein.

111.    As a result of the foregoing, plaintiff BRANDON BARNES was falsely imprisoned, his liberty was restricted for an extended period of time, he was put in fear for his safety, and he was humiliated and subjected to handcuffing and other physical restraints.

112.    Plaintiff BRANDON BARNES was conscious of said confinement and did not consent to same.

113.    The confinement of plaintiff BRANDON BARNES was without probable cause and was not otherwise privileged.

114.    As a result of the aforementioned conduct, plaintiff BRANDON BARNES has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### ASSAULT

115.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs numbered "1" through "114" with the same force and effect as if fully set forth herein.

116.    Defendants' aforementioned actions placed plaintiff BRANDON BARNES in apprehension of imminent harmful and offensive bodily contact.

117.    As a result of defendants' conduct, plaintiff BRANDON BARNES has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### BATTERY

118.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "117" with the same force and effect as if fully set forth herein.

119.    Defendant police officers touched plaintiff BRANDON BARNES in a harmful and offensive manner.

120.    Defendant police officers did so without privilege or consent from plaintiff BRANDON BARNES.

121.    As a result of defendants' conduct, plaintiff BRANDON BARNES has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

## FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### MALICIOUS ABUSE OF PROCESS

122.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "121" with the same force and effect as if fully set forth herein.

123.    Defendant police officers issued legal process to place plaintiff BRANDON BARNES under arrest.

124.    Defendant police officers arrested plaintiff BRANDON BARNES to obtain a collateral objective outside the legitimate ends of the legal process.

125.    Defendant police officers acted with intent to do harm to plaintiff BRANDON BARNES, without excuse or justification.

126.    As a result of the aforementioned conduct, plaintiff BRANDON BARNES suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

## SIXTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## MALICIOUS PROSECUTION

127.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "126" with the same force and effect as if fully set forth herein.

128.    On or about September 14, 2018, the defendant City of New York, its agents, servants and employees, and the aforesaid defendant police officers commenced a criminal proceeding against plaintiff BRANDON BARNES, and falsely and maliciously, and without probable cause, charged plaintiff with crimes.

129.    Defendants, with the consent and participation of one another, continued said proceeding despite the fact that they knew or should have known that plaintiff BRANDON BARNES had not committed any crimes, that there were no exigent circumstances justifying a warrantless arrest, and that there was no need for the arrest and imprisonment of plaintiff.

130.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff BRANDON BARNES.

131.    Defendants lacked probable cause to initiate criminal proceedings against plaintiff BRANDON BARNES.

132.    Defendants were motivated by actual malice in initiating criminal proceedings against plaintiff BRANDON BARNES.

133.    Defendants misrepresented and falsified evidence before the District Attorney.

134.    Defendants did not make a complete and full statement of facts to the District Attorney.

135.    Defendants withheld exculpatory evidence from the District Attorney.

136.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff BRANDON BARNES.

137.    Defendants lacked probable cause to continue criminal proceedings against plaintiff BRANDON BARNES.

138.    Defendants were motivated by actual malice in continuing criminal proceedings against plaintiff BRANDON BARNES.

139.    Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in plaintiff BRANDON BARNES's favor on or about November 29, 2018, when all charges against him were dismissed.

**SEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

140.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "139" with the same force and effect as if fully set forth herein.

141.    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

142.    The aforementioned conduct was committed by all of the individual defendants while acting within the scope of their employment.

143.    The aforementioned conduct was committed by all of the individual defendants while acting in furtherance of their employment.

144.    The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to plaintiff BRANDON BARNES.

145.    As a result of the aforementioned conduct, plaintiff BRANDON BARNES suffered physical injury and severe emotional distress and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

## EIGHTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

146.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "145" with the same force and effect as if fully set forth herein.

147.    The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

148.    The aforementioned conduct was negligent and caused severe emotional distress to plaintiff BRANDON BARNES.

149.    The aforementioned conduct was committed by all of the individual defendants while acting within the scope of their employment.

150.    The aforementioned conduct was committed by all of the individual defendants while acting in furtherance of their employment.

151.    As a result of the aforementioned conduct, plaintiff BRANDON BARNES suffered physical injury and severe emotional distress and mental injury, together with

embarrassment, humiliation, shock, fright and loss of freedom.

## NINTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## NEGLIGENT HIRING AND RETENTION

152.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "151" with the same force and effect as if fully set forth herein.

153.    Upon information and belief, defendant City of New York failed to use reasonable care in the hiring and retention of the aforesaid defendants who conducted and participated in the arrest of plaintiff BRANDON BARNES.

154.    Defendant City of New York knew, or should have known in the exercise of reasonable care, the propensities of the defendants DET. ALBERTO PIZARRO and P.O.s JOHN and JANE DOE #1-10 to engage in the wrongful conduct heretofore alleged in this Complaint.

## TENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## NEGLIGENT TRAINING AND SUPERVISION

155.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "154" with the same force and effect as if fully set forth herein.

156.    Upon information and belief the defendant City of New York failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the assault upon and arrest of plaintiff BRANDON BARNES.

## ELEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## UNLAWFUL SEARCH

157.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "156" with the same force and effect as if fully set forth

herein.

158.    Defendants strip-searched plaintiff BRANDON BARNES unlawfully and in the absence of any legitimate law enforcement purpose for doing so.

159.    Defendants cavity-searched plaintiff BRANDON BARNES unlawfully and in the absence of any legitimate law enforcement purpose for doing so.

160.    The foregoing actions violated plaintiff BRANDON BARNES's constitutional and statutory rights to privacy and bodily integrity

161.    As a result of defendants' conduct, plaintiff BRANDON BARNES has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment and humiliation.

162.    As a result of the foregoing, plaintiff is entitled to compensatory damages in the sum of two million dollars ($2,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of two million dollars ($2,000,000.00).

**WHEREFORE**, plaintiff BRANDON BARNES demands judgment in the sum of two million dollars ($2,000,000.00) in compensatory damages and two million dollars ($2,000,000.00) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:    New York, New York
          August 1, 2019

_____/s_____
ROSE M. WEBER (RW 0515)
30 Vesey Street, Suite 1801
New York, NY 10007
(212) 748-3355